UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MERLE L. ENNIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:20 CV 434 CDP |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Merle L. Ennis brings this action under 42 U.S.C. §§ 405 and 1383 seeking judicial review of the Commissioner's final decision denying his claims for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  For the reasons that follow, I will reverse the decision and remand for further proceedings.

### Procedural History

On September 20, 2017, the Social Security Administration denied Ennis's June 2017 application for DIB and SSI in which he claimed he became disabled on

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.  She is substituted for former Commissioner Andrew Saul as defendant in this action.  *See* Fed. R. Civ. P. 25(d).

May 27, 2016, because of schizophrenia with bipolar tendencies; anger outbursts; severe depression; severe sleep apnea; chronic obstructive pulmonary disease; degenerative disc disease; spinal stenosis; memory loss; obesity; and arthritis in the knees, shoulders and back.  (Tr. 249).  A hearing was held before an administrative law judge (ALJ) on February 21, 2019, at which Ennis and a vocational expert testified.  (Tr. 41-71).  On May 10, 2019, the ALJ denied Ennis's claims for benefits, finding that vocational expert testimony supported a conclusion that Ennis could perform work that exists in the national economy.  (Tr. 22-35).  On January 16, 2020 the Appeals Council granted Ennis's request for review, and on February 25, 2020 denied Ennis's claims for benefits. (Tr. 4-9).  The Appeals Council's decision is thus the final decision of the Commissioner.

In this action for judicial review, Ennis claims that the Commissioner's decision is not supported by substantial evidence.  Specifically, Ennis argues that, in determining his residual functional capacity (RFC), the Commissioner improperly ignored clinical findings related to Ennis's back impairments and otherwise mischaracterized the record.  Ennis also argues that the defendant improperly evaluated the opinion evidence of two of Ennis's treating physicians. Ennis asks that I reverse and remand the administrative decision for further evaluation.

## Medical Records and Other Evidence Before the ALJ

With respect to medical records and other evidence of record, I adopt Ennis's recitation of facts set forth in his Statement of Uncontroverted Material Facts (ECF 21) as admitted by the Commissioner with unrefuted additional facts (ECF 27-1).  This Statement provides a fair and accurate description of the relevant record before the Court.  Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A. <u>Legal Standard</u>

To be eligible for DIB and SSI under the Social Security Act, Ennis must prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful

3

work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine

whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a

determination as to whether the claimant is currently engaged in substantial gainful

activity; whether he has a severe impairment; and whether his severe

impairment(s) meets or medically equals the severity of a listed impairment.  At

Step 4 of the process, the ALJ must assess the claimant's RFC—that is, the most

the claimant is able to do despite his physical and mental limitations, *Martise v.*

*Astrue*, 641 F.3d 909, 923 (8th Cir. 2011)—and determine whether the claimant is

able to perform his past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th

Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is

unable to perform his past work, the Commissioner continues to Step 5 and

determines whether the claimant can perform other work as it exists in significant

numbers in the national economy.  If so, the claimant is found not to be disabled,

and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If he meets

this burden and shows that he is unable to perform his past relevant work, the

burden shifts to the Commissioner at Step 5 to produce evidence demonstrating

that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, the Commissioner may satisfy her burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome.

*McNamara*, 590 F.3d at 610.

B. The Appeals Council's Decision

The Appeals Council found that Ennis met the special earnings requirements of the Act through December 31, 2019 and has not engaged in substantial gainful activity since May 27, 2016, the date he alleges he became unable to work.  The Appeals Council found that Ennis has the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; status post right knee arthroscopy; status post bilateral shoulder arthroscopy; diabetes mellitus; obesity; schizoaffective disorder; intermittent explosive disorder; panic disorder; and bipolar disorder.  However, it found those impairments do not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 7).  The Appeals Council found that Ennis had the RFC to perform a reduced range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a):

> He is able to lift, carry, push and pull 10 pounds occasionally and less than 10 pounds frequently. He is able to sit for six hours and stand and walk for two hours in an eight-hour day. He can occasionally climb ramps and stairs, but not ladders, ropes or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He is limited to only occasional overhead reaching bilaterally. He is limited to no exposure to hazardous machinery, no exposure to unprotected heights, and less than occasional exposure to extreme temperatures and vibrations. He must stand for five minutes every hour while remaining on task. The claimant is limited to simple routine repetitive tasks, not at a production rate pace, with few changes in work setting, and with only occasional

6

interactions with supervisors and coworkers, no interactions with the
public, and no tandem tasks.

(Tr. 7).  Considering Ennis's RFC, age, education, and lack of past relevant work,

the Appeals Council found vocational expert testimony to support a conclusion that

Ennis could perform work as it exists in significant numbers in the national

economy, and specifically as a document preparer, final assembler, and stuffer.

(Tr. 8).  The Appeals Council thus found that Ennis was not under a disability at

any time through the date of the ALJ's decision.  (Tr. 8).

   C. <u>RFC Determination</u>

   Ennis challenges the Appeals Council's RFC determination.  Specifically, he

contends that the Appeals Council and ALJ failed to consider much of the record

as it relates to his back pain, and otherwise mischaracterized his course of

treatment.  Because the Appeals Council omitted much of the material evidence of

record, he argues, its RFC determination is not supported by substantial evidence.

   Residual functional capacity is the most a claimant can do despite his

physical or mental limitations.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.

2004).  The ALJ bears the primary responsibility for assessing a claimant's RFC

based on all relevant, credible evidence in the record, including medical records,

the observations of treating physicians and others, and the claimant's own

description of his symptoms and limitations.  *Goff*, 421 F.3d at 793; 20 C.F.R. §§

404.1545(a), 416.945(a).  The RFC "'is a function-by-function assessment based

upon all of the relevant evidence of an individual's ability to do work-related activities[.]'" *Roberson v. Astrue,* 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting S.S.R. 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)).  A claimant's RFC is a medical question, however, "that 'must be supported by some medical evidence of [the claimant's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)).  "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell v. Massanari,* 259 F.3d 707, 712 (8th Cir. 2001)).

The Appeals Council adopted the ALJ's findings under the five-step sequential evaluation and her conclusion that Ennis is not disabled.  In the ALJ's RFC analysis, she noted that Ennis's primary physical limitations are caused by neck, back, and knee pain and that he has been diagnosed with spondylosis of the cervical region, intervertebral disc displacement in the lumbar region, and osteoarthritis of the knee.  The ALJ acknowledged Ennis claimed that his pain severely limited his activities of daily life:

> According to the claimant, he has spinal problems which have failed to respond to injections and medications, limited range of motion in his upper and lower extremities, and decreased strength in his hands. He testified he cannot type due to tingling in his hands. . . . He claims a 10-year history of back problems treated by chiropractors and pain management. He has had injections and takes opiate medication three

times a day. His pain is worse in the lower back, radiating down the right leg. Standing and sitting makes pain worse, according to the claimant. He says he can only stand 10 minutes before knees and legs give out on him. Can only sit for 10 minutes [.] He does not exercise and spends most of the day lying down or sitting in bed and watching television. . . .  When asked how his neck issues affect him, he replied that he is unable to go on amusement park rides. He complains of problems with his hands, but is able to lift a gallon of milk. He finds it hard to get a lid off of a bottle and needs help with buttons and zippers and cutting up food. He experiences weakness and numbness in his legs when trying to walk and cannot reach overhead because it bothers his shoulders. However, he told his pain doctor that, with medication, he can perform his activities of daily living.

(Tr. 28).  However, the ALJ found that his claims were internally inconsistent. The Appeals Council added that, while Ennis complains of disabling pain, "the record is largely devoid of signs of severe chronic pain."  (Tr. 6).[2]  This conclusion is not supported by substantial evidence on the record as a whole and appears to be based on an incomplete review of the record.

For purposes of social security analysis, a "symptom" is an individual's own description or statement of her physical or mental impairment(s).  SSR 16-3p, 2017

---

[2] The Appeals Council also found that the ALJ did not evaluate the severity of the Ennis's back impairments, but "the [ALJ] discussed the medical evidence relating to [Ennis's] back pain in the decision and his [sic] failure to evaluate the severity of the claimant's back impairment appears to be an oversight." (Tr. 5). Ennis contends that the Appeals Council faults the ALJ's analysis of his back pain during his RFC analysis and that it erred when it adopted the ALJ's RFC findings.  However, the Appeals Council faulted the ALJ for failing to evaluate Ennis's back pain at Step 2 of the five-step sequential analysis; to the Appeals Council, the ALJ's analysis of Ennis's back pain during its RFC analysis was sufficient to show that its omission at Step 2 was a mere oversight.  Regardless, a failure to find severe impairments at Step 2 may be harmless where the ALJ continues with the sequential evaluation process and considers all impairments, both severe and non-severe.  *Haley v. Colvin*, No. 2:13CV29 CDP, 2014 WL 117575, at *10 (E.D. Mo. Jan. 13, 2014).

WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  If a claimant

makes statements about the intensity, persistence, and limiting effects of her

symptoms, the ALJ must determine whether the statements are consistent with the

medical and other evidence of record.  *Id.* at *8.  When evaluating a claimant's

subjective statements about symptoms, the ALJ must consider all evidence relating

thereto, including the claimant's prior work record and third party observations as

to her daily activities; the duration, frequency and intensity of the symptoms; any

precipitating and aggravating factors; the dosage, effectiveness and side effects of

medication; and any functional restrictions.  *Halverson v. Astrue*, 600 F.3d 922,

931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)

(subsequent history omitted).  If the ALJ finds the statements to be inconsistent

with the evidence of record, she must make an express determination and detail

specific reasons for the weight given the claimant's testimony.  SSR 16-3p, 2017

WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012);

*Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).

The Appeals Council adopted the ALJ's analysis of Ennis's back pain, but

the ALJ inadequately explained her reasons for rejecting Ennis's subjective

complaints.  The ALJ found that Ennis's statements about "the intensity,

persistence, and limiting effects of his or her symptoms [sic]… are inconsistent

because he is not consistent in describing the nature and extent of his limitations.

10

Even considering the possibility that he has 'good' and 'bad' days, the extreme differences are difficult to rationalize."  (Tr. 32).  But the ALJ was required to specify those precise inconsistencies.  *Renstrom*, 680 F.3d at 1066 (8th Cir. 2012) (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the *Polaski* factors.").  She failed to do so here.

By contrast, the Appeals Council specified inconsistencies.  When explaining why it found Dr. Krishnan's opinion unpersuasive, the Appeals Council noted:

> While the claimant alleges disabling pain, the record is largely devoid of signs of severe chronic pain. For instance, repeated examinations have shown normal muscle strength and tone, no signs of atrophy etc….[3] The claimant's treatment has been conservative and consisted of taking medication.

(Tr. 6).  But a review of the record, *in toto*, shows considerable evidence that Ennis indeed suffered severe chronic pain that the Appeals Council failed to address.

For instance, Ennis was repeatedly diagnosed with chronic pain.  (Tr. 436, 441, 1111, 1482).  And multiple examinations by Dr. Krishnan and his treatment team at Interventional Pain Care and Comprehensive Pain Specialists documented

---

[3] (Tr. 898, 910, 918, 1028, 1061, 1084-85, 1107, 1188, 1399, 1400, 1531, 1977, 1992, 2120, 2222, 2418, and 2424).

decreased muscle strength and motor function in the upper back and lower extremities.  (Tr. 909-10, 912, 915, 918, 1111).  They also recorded other evidence of pain, including restricted range of motion in the neck and back (Tr. 1124, 965, 1140, 1136, 1132, 1128); paraspinal muscle tenderness and spasms (948-59, 964-65); positive Facet Loading tests (959, 966, 953); decreased sacroiliac joint mobility (Tr. 965, 953, 959); positive myofascial trigger points (Tr. 959, 965); antalgic gait (Tr. 953, 964, 968); moderate limp (Tr. 1140, 1136, 1132, 1128, 1124); and positive provocative tests, including Patricks, Gaenstens, Pelvic Distraction, and Lateral Compression, on the right (Tr. 966).  In a consultative examination on September 19, 2017, Dr. Yasuo Ishida found similar evidence of severe pain: limited range of motion in the neck; tenderness at the nape of the neck, bilateral shoulders and mid line pain around T4; tenderness across the lumbar area and bilateral hips; limited range of motion of the extremities; bilateral shoulder tenderness; bilateral hip pain; bilateral knee pain; unsteady gait; inability to remove his socks; inability to do toe-heel walk; difficulty getting on and off examination table; clumsy fine and dexterous finger control with buttons; difficulty squatting.  (Tr. 932).  Notably, neither the ALJ nor the Appeals Council acknowledged that Ennis presented to the emergency room on March 28, 2017 complaining of severe back pain.  Dr. Ameha Hagos noted tenderness and deformity, and pain in his lumbar back.  (Tr. 1480).  She diagnosed him with, *inter*

12

*alia*, chronic pain.  (Tr. 1482).  Moreover, Ennis's diagnoses of chronic pain, coupled with a long history of pain management and drug therapy, is an objective medical fact evidencing pain. *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998).[4]

In short, Ennis cites substantial evidence in the record that neither the ALJ nor the Appeals Council acknowledged.  While "[i]t is the [Appeals Council's] duty to resolve conflicts in the evidence, including medical evidence, and I may not substitute my opinion for the [Appeals Council]," the Appeals Council made misstatements of the record indicating that it ignored, rather than resolved, conflicting evidence.  *Schmidt v. Berryhill*, No. 4:17 CV 2375 CDP, 2019 WL 339634 at *4 (E.D. Mo. Jan. 28, 2019) (citing *Phillips v. Colvin*, 721 F.3d 623, 629 (8th Cir. 2013)).  For instance, the Appeals Council identified two treatment notes that show normal muscle strength and tone in general neurological exams.  But a review of these notes show that Ennis exhibited 3/5 motor strength in the Cervical Spine/Neck and 4/5 motor system function in the Lumbar Spine/Lower Back.  (Tr. 918, 908-10).  Indeed, not only do these notes show decreased strength, but they also show decreased range of motion, muscle spasms, and depressed sensation throughout the neck and back; positive straight leg test in left and right; and

---

[4] I am aware that the mere taking of narcotic pain medication does not require an ALJ to credit a claimant's subjective complaint that her pain is disabling. *See Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).  But Ennis's complaints are substantiated by other evidence, including the diagnosis of chronic pain syndrome and positive provocative tests.

13

positive Facet loading test on the left and right.  (Tr. 918, 909-10).  Other treatment notes cited by the Appeals Council show normal strength and tone but demonstrate other indicia of pain: on August 21, 2018 Nurse Axley noted decreased range of motion in the neck (Tr. 1061), on April 19, 2018, Nurse Eftink noted a moderate limp due to knee pain (Tr. 1107), on October 8, 2018, in an emergency room visit after a fall, Shannon Ballard, R, PA-C noted decreased range of motion, bony tenderness, pain and spasms in both shoulders (Tr. 1399), and on January 3, 2019, Dr. Lu Xinrong documented "4/5 bl UEs/LEs" and bradykinesia (Tr. 2418).

Also, the Appeals Council discounted the opinion evidence submitted by Dr. Krishnan in part because Ennis's "normal strength and tone" contradicted complaints of disabling pain, and in part because "it is unclear if he actually rendered care to the claimant instead of overseeing the nurse practitioners who prescribed the pain medication."  (Tr. 6).  But Dr. Krishnan personally examined Ennis at least four times during the relevant period.  (Tr. 962-7, 956-61, 908-10, 904-6).  And the Appeals Council even cited to two of his treatment notes—one of which showed decreased range of motion and muscle strength.  Given that Dr. Krishnan's name appears at the beginning of each note, he signed each note, and each note states "PT. WAS SEEN TO DAY BY MD/DO", it is readily apparent

14

that Dr. Krishnan conducted these examinations.  (Tr. 963, 958, 908, 904).[5]

While the Appeals Council is not required to explain all evidence in the record, it cannot pick and choose only evidence supporting its conclusion.  *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010); *Nelson v. Saul*, 413 F. Supp. 3d 886, 916 (E.D. Mo. 2019).  *See also Taylor ex rel. McKinnies v. Barnhart*, 333 F/ Supp 2d 846, 856 (E.D. Mo. 2004) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[T]he Secretary's attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper.")).  The Appeals Council should at least "minimally articulate [its] reasons for crediting or rejecting evidence of disability." *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).  The Appeals Council failed to do so here.  While the Appeals Council may have considered and for valid reasons rejected evidence of Ennis's pain, I am unable to determine whether any such rejection is based on substantial evidence given the Appeals Council's failure to address it.  *Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1985).  It is not within the province of this Court to speculate whether or why the Commissioner may

---

[5] To the extent Ennis was examined by other providers, the record is likewise clear in this regard. See, e.g., Tr. 1110-11 ("Patient was seen in the office by NP, For Full Visit, Dr. Krishnan was available and confirmed plan of care, Dr. Krishnan was in the office and signed the Rx.").

have rejected certain evidence.  *Id.*

"Although most of the record can properly be characterized as mixed—which normally would require that [I] affirm under the substantial evidence standard—" the Appeals Council's material misstatements of the record and failure to acknowledge conflicting evidence betray an incomplete examination of the record.  *Noerper*, 964 F.3d at 746.  Therefore, its decision is not supported by substantial evidence on the record as a whole.

D. <u>Analysis of Opinion Evidence</u>

Ennis also argues that the Appeals Council failed to adequately evaluate Dr. Krishnan and Dr. Bello Adejoh's medical opinion statements.  He claims that the Appeals Council's characterization of each doctors' treatment is not supported by substantial evidence.

For claims like Ennis's that are filed on or after March 27, 2017, an ALJ evaluates medical opinions and administrative medical findings pursuant to 20 C.F.R. § 404.1520c.  These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources."  20 C.F.R. § 404.1520c(a).  An ALJ is to evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of the following factors: (1)

supportability; (2) consistency; (3) relationship with the claimant, which includes: (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies."  20 C.F.R. § 404.1520c(a)-(c).

Under the new regulations, supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions and, therefore, an ALJ must explain how he considered the factors of supportability and consistency in his decision.  20 C.F.R. § 404.1520c(b)(2).  An ALJ may, but is not required to, explain how he considered the remaining factors.  *Id.*; see also *Brian O. v. Comm'r of Soc. Sec.*, No. 1:19-CV-983-ATB, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.' " (alterations omitted)).

The Appeals Council noted that the ALJ's analyses of Dr. Krishnan's and Dr. Adejoh's opinions were inadequate because she did not fully elaborate on the

factors that she considered.  The Appeals Councils then concluded that these opinions were unpersuasive because they were inconsistent with the objective evidence in the record, including the doctors' own treatment notes.

1. Dr. Krishnan's Opinion

Dr. Krishnan submitted an opinion claiming Ennis is limited to less than sedentary work.  He indicated that Ennis can only occasionally lift up to ten pounds, can stand and walk no more than two hours in an eight-hour workday, and cannot engage in sustained sitting because he needs to change position every 30 minutes.  Dr. Krishnan also indicated that Ennis cannot use the upper extremities for frequent reaching overhead; reaching, pushing, or pulling; or handling, fingering, and feeling.  He noted that Ennis is in constant pain and would need to rest more than two hours in an eight-hour workday.  (Tr. 2441).  The Appeals Council found Dr. Krishnan's opinion unpersuasive because it is contradicted by the record and it was not clear Dr. Krishnan rendered care.  As noted above, the Appeals Council mischaracterized the record and Dr. Krishnan's involvement in Ennis's treatment.  Its decision is not supported by substantial record on the whole.

2. Dr. Adejoh's Opinion

The Appeals Council also found the opinion of Dr. Adejoh, Ennis's psychiatrist, unpersuasive.  Dr. Adejoh noted that Ennis had marked or extreme limitations in abilities relating to his concentration and performance, social

18

interaction, and adaptation.  He estimated that Ennis would be off task more than 15% of the time and miss more than three workdays a month due to psychiatric impairments. (Tr. 2452).

The Appeals Council found Dr. Adejoh's opinion inconsistent with Ennis's conservative psychiatric treatment and Dr. Adejoh's cursory notes:

> While the claimant has a history of suicidal ideation in the context of a motor vehicle accident and medication reactions, the claimant's regular psychiatric treatment was conservative and consisted of seeing Dr. Adejoh every few months to refill medication. . . . Dr. Adejoh's notes regarding these visits are cursory and the claimant's mental examinations at appointments were normal. . . . Dr. Adejoh's opinion is cursory and provides no explanation for his work restrictions, which are unsupported by his treatment notes or the claimant's history of conservative psychiatric treatment.

(Tr. 6). While Dr. Adejoh's notes are cursory and he fails to explain his work restriction assessments, the Appeals Council's characterization of Ennis's psychiatric treatment appears to be based on an incomplete review of the record.

Ennis was hospitalized in the psychiatric unit six times over the alleged period of disability: May 27-31, 2016 (Tr. 769-806); April 7-13, 2017 (Tr. 495-531); June 28-30, 2018 (Tr. 1007-56); June 30, 2018 – July 3, 2018 (Tr. 1280-1330); August 26-28, 2018 (Tr. 1331-80); and January 3-6, 2019 (Tr. 2387-2438). During these hospitalizations, Ennis reported, *inter alia*, voices telling him to hurt others and drive a truck off the road at a high speed (Tr. 775), repeated auditory and visual hallucinations (Tr. 775; 1009; 1178; 1282), paranoia (Tr. 1009),

depression (Tr. 774), slurred speech (Tr. 1334); intentions to shoot himself in the head (Tr. 495), and thoughts of cutting his throat with a knife (Tr. 1009). Various providers also noted depressed mood and affect (Tr. 776); poor judgment (Tr. 776); blunted and flat affect (Tr. 495); impaired impulse control (Tr. 496); anxious, depressed, and blunted mood and affect (Tr. 498); impaired attention and concentration (Tr. 498); guarded appearance and behavior (Tr. 512); dysphoric mood and affect (Tr. 512); dysthymic and flat mood and affect (Tr. 524); poor insight and judgment (Tr. 524); disheveled, disinterested, and disengaged appearance (Tr. 1009); psychomotor retardation (Tr. 1011); blocked thought processes (Tr. 1011); anxious constricted, depressed, and blunted mood and affect (Tr. 1011); impaired attention and concentration (Tr. 1012); poor insight and judgment (Tr. 1012); mild cerebral atrophy (Tr. 2391); and repeated suicidal ideas or ideation (Tr. 1009; 775, 495). Other treatment providers also noted symptoms related to mood, affect, and judgment. And he was diagnosed with, *inter alia*, schizoaffective disorder, bipolar type (Tr. 855, 491, 1537), intermittent explosive disorder (Tr. 855, 1537-38), major depressive disorder with psychotic features (Tr. 525), and panic disorder (Tr. 1537).

Even though Ennis's June and July 2018 hospitalizations appear related to lithium toxicity, and his August 2018 hospitalization related to polypharmacy, his hospitalization record and consistent diagnoses indicate severe, poorly controlled

20

psychiatric symptoms. Moreover, the Appeals Council discounts Ennis's suicidal ideation within the context of motor vehicle accidents—but his suicidal ideation is salient evidence contradicting the Appeals Council's characterization of conservative psychiatric treatment.  Ennis planned to drive a truck off the road at a high speed in March 2016 (Tr. 775) and planned to shoot himself in the head after a motor vehicle accident in April 2017 (Tr. 495). He reported that he "ran off the road but not sure if deliberate" in August 2018 (Tr. 2256).  These recurrent suicidal thoughts are directly relevant to his mental impairments.

While Dr. Adejoh's opinion fails to explain his work restrictions, and his notes are cursory, Ennis's mental examinations at appointment were not normal, as the Appeals Council found.  Dr. Adejoh repeatedly observed that Ennis's insight and judgment were guarded; his mood was sad, depressed, angry, anxious, labile, or irritable; and his grooming was fair to poor.  He also consistently assessed a Global Assessment Functioning score of 41-50, indicating serious symptoms. Such observations are consistent with Ennis's psychiatric hospitalization record.

While the Appeals Council may have considered and for valid reasons rejected evidence of Ennis's psychiatric history, I am unable to determine whether any such rejection is based on substantial evidence given the Appeals Council's failure to address it.  *Jones*, 65 F.3d at 104.  Again, the Appeals Council's failure to acknowledge conflicting evidence betrays an incomplete examination of the

record.  Its decision is therefore not supported by substantial evidence on the record as a whole.

## Conclusion

For the reasons stated above, the Appeals Council's decision is not supported by substantial evidence on the record as a whole.  I will therefore reverse the Commissioner's final decision and remand the matter for further proceedings.

The Commissioner must reevaluate Ennis's RFC, which must include an assessment of the record evidence and Ennis's subjective statements of symptoms. This RFC shall be based on some medical evidence in the record and shall be accompanied by a discussion of the evidence in a manner that shows how the evidence supports each RFC conclusion.  The Commissioner is reminded that consideration must be given to the limitations and restrictions imposed by all of Ennis's medically determinable impairments, both severe and non-severe, as well as limitations imposed by medication side effects.  Whether and to what extent the Commissioner finds opinion evidence persuasive in determining Ennis's RFC must be properly informed and supported by the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this case is **REMANDED** for further proceedings.

22

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_Catherine D. Perry_
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of October, 2021.